UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LENISE WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 01-cv-4103 |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N and O R D E R

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 21) and Defendant's Motion for Summary Affirmance (Doc. 19). For the reasons set forth below, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.

### BACKGROUND

**I. Procedural History**

This case has had a particularly long history as outlined in two Orders issued by this Court on March 8, 2007 (Doc. 15) and November 30, 2009 (Doc. 23).

Plaintiff filed for Supplemental Security Income (SSI) benefits on August 27, 1998 due to a variety of mental disorders including schizophrenia, depression, manic depression, and headaches ("first application"). This first application was denied through all stages before the administrative agency and was appealed to this Court on November 26, 2001. By an agreed motion, however, the matter was remanded to the agency in light of a second claim for benefits and a subsequent award of benefits on July 27, 2000 ("second application"). The second application

awarded benefits from May, 2000. As such, the only issue before the agency upon remand was whether Plaintiff was entitled to benefits from August, 1998 to April, 2000 (on the first application) in light of evidence that was developed with respect to the second application.

The agency issued another unfavorable decision on December 30, 2005 (Plaintiff was incarcerated at some point during the interim) (Tr. 238-250). The parties then filed briefs related to that decision. On March 9, 2007, this Court directed the parties to brief the issue of whether the ALJ considered evidence from the second application and whether the ALJ nonetheless denied benefits consistent with the law. Plaintiff was directed to attach any evidence to her brief that the ALJ did not consider (but should have) and the parties were further directed to indicate, in list form, the evidence that was considered by the Commissioner in granting the second application.[1] Both parties filed briefs but neither provided the list of evidence. Plaintiff argued that the ALJ failed to consider Plaintiff's medical records related to anxiety, failed to comply with the remand Order, and that the matter should be remanded to consider a new IQ test.

In a November 30, 2009 Order, this Court noted the deficiencies in the briefing and directed Defendant to address Plaintiff's assertion that the ALJ failed to develop the record by failing to obtain a complete file related to the second application. Further, Defendant was directed to address the issue of whether there was evidence relied on in the second application that was not considered by the ALJ on the first application. In response, Defendant indicates that the "decisional

---

[1] The second application was granted at the initial stages – thus there is no decision by an ALJ.

notices from the 2000 award of benefits [i.e. second application] that explained what specific evidence the Administration relied on have been lost in the transfers between several offices." Thus, Defendant is "unable to determine with certainty what evidence was actually relied on by the Administration finding Plaintiff to be disabled beginning May 1, 2000." Defendant nonetheless argues that the ALJ's decision should be affirmed because it is based on substantial evidence showing that Plaintiff was not disabled prior to that date.

## II. Medical History

In light of the limited nature of Plaintiff's arguments, a full recitation of Plaintiff's medical history is not necessary. Relevant medical history will be detailed below.

## III. ALJ's Determination

In the December 30, 2005 decision, ALJ Jean M. Ingrassia determined that Plaintiff had not engaged in substantial gainful activity since March 10, 1995, that Plaintiff suffers from no physical restrictions, but that Plaintiff suffers from severe mental impairments of schizoaffective disorder, a chemical dependency disorder, a bipolar disorder (mixed type), a personality disorder, a mood disorder, a panic disorder, an adjustment disorder, and a substance abuse disorder (Tr. 240). The ALJ went on to find that the impairments did not meet the Listing of Impairments during the relevant time period (Tr. 244). In doing so, the ALJ noted that the evidentiary support for the second application was a May, 2000 report by Dr. Domingo, a treating psychiatrist, who concluded that Plaintiff could not function in

a work situation; thus, Plaintiff was found to meet Section 12.06 (anxiety related disorders) of the Listings (Tr. 243).

ALJ Ingrassia went on to find that Plaintiff was less than credible with respect to the functional limitations due to her conditions. In so concluding, the ALJ stated that Plaintiff responded to medication, that there was no history of mental retardation, no evidence of suicide attempts despite Plaintiff's assertion of multiple attempts, no showing of a learning disability, and because "[t]he record indicates she will say whatever is needed to receive disability benefits" (Tr. 247). The ALJ concluded that Plaintiff could have performed her past relevant work as a motel housekeeper and that there were other regional jobs in significant numbers that Plaintiff could have perform (Tr. 248).

## DISCUSSION

### I. Legal Standard

To be entitled to disability benefits under the Social Security Act, a claimant must prove that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To determine if the claimant is unable to engage in any substantial gainful activity, the Commissioner of Social Security engages in a factual determination. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *see also Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999).

In the first step, a threshold determination is made to decide whether the claimant is presently involved in a substantially gainful activity. 20 C.F.R. §§

404.1520(a)(i), 416.920(a)(i). If the claimant is not under such employment, the Commissioner of Social Security proceeds to the next step. At the second step, the Commissioner evaluates the severity and duration of the impairment. 20 C.F.R. §§ 404.1520(a)(iii), 416.920(a)(iii). If the claimant has an impairment that significantly limits his physical or mental ability to do basic work activities, the Commissioner will proceed to the next step. At the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work; and, if the elements on the list are met or equaled, he declares the claimant eligible for benefits. 20 C.F.R. §§ 404.1520(a)(iv), 416.920(a)(iv). If the claimant does not qualify under one of the listed impairments, the Commissioner proceeds to the fourth and fifth steps. At the fourth step, the claimant's RFC is evaluated to determine whether the claimant can pursue his past work. 20 C.F.R. §§ 404.1520(a)(iv), 416.920(a)(iv). If he cannot, then, at step five, the Commissioner evaluates the claimant's ability to perform other work available in the economy. 20 C.F.R. §§ 404.1520(a)(v), 416.920(a)(v).

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. § 405(g), which provides, in relevant part, "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Maggard*, 167 F.3d at 379 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The claimant has the burden to prove disability through step four of the analysis, i.e., he must demonstrate an impairment that is of sufficient severity to preclude him from

5

pursuing his past work. *McNeil*, 614 F.2d at 145. However, once the claimant shows an inability to perform his past work, the burden shifts to the Commissioner, at step five, to show the claimant is able to engage in some other type of substantial gainful employment. *Id*.

## II. Analysis

As an initial matter, it is clear that there are records missing from Plaintiff's claim file which may have been used in making a determination on the second application and/or which would explain the Commissioner's decision as to the second application. Neither Plaintiff nor Defendant offer any indication of what these records may have been – additional medical records, additional psychological testing, or additional consultative examinations. What is clear is that ALJ Ingrassia believed that Dr. Domingo's May, 2000 report was given significant evidentiary weight when benefits were awarded at that time. The question now becomes whether it would make sense to remand this matter a second time for the Commissioner to make a new assessment on a claim that is at least ten years old based on documentation that apparently does not exist.

It makes no sense to require such a futile task. As Defendant correctly points out, this Court's ultimate duty is to determine whether substantial evidence supports the Commissioner's decision on the first application. To that end, Plaintiff's remaining arguments will be addressed.

Plaintiff's first substantive argument is that the ALJ ignored a line of evidence related to Plaintiff's anxiety, in particular Exhibits 19F and 20F (Tr. 502-515, 516-529). An ALJ need not discuss every piece of evidence; however, an ALJ

6

may not ignore an entire line of evidence. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

The first exhibit contains a "Diagnostic Assessment/Biopsychosocial Diagnostic Summary" completed on September 9, 1998 by personnel at the Riverside Chemical Dependency Treatment Center and participant logs related to Plaintiff's attendance of group therapy sessions at the Robert Young Center in September and October, 1998. Plaintiff reported that she had been sexually abused as a child, had a history of substance abuse, had been hospitalized for psychiatric treatment, and had attempted suicide approximately 10 times (Tr. 502-503). Plaintiff reported hearing voices and having nightmares (Tr. 505). The summary indicates that Plaintiff's "memory and concentration is poor. Client's comprehension is rather slow" (Tr. 504). At the time, Plaintiff was taking no medication (Tr. 503). Plaintiff was observed as having a normal appearance and mood, that her orientation was intact, that her insight was normal, but that her intelligence was below average, she was irritable and argumentative as to treatment options, and her judgment was poor (Tr. 504-505). The summary identified three conditions, alcohol, opioid, and cocaine dependence all in sustained full remission, and a Global Assessment of Functioning Score of 40 (Tr. 505). Plaintiff's treatment plan included only group therapy and a psychological testing referral (Tr. 505). Notes from the therapy sessions indicate Plaintiff was discharged for failing to attend (Tr. 510). There is no reference in the notes specifically to an anxiety disorder.

The second exhibit contains treatment notes from psychiatrists Dr. Eric J. Ritterhoff and Dr. D.V. Domingo who treated Plaintiff from August, 1999 to October 31, 2002 (Tr. 516-529). The first progress note is dated August 20, 1999 and states that Plaintiff's "diagnosis is questionable at this time" and could include "some kind of adjustment disorder or maybe bipolar disorder (Tr. 529). The note indicated that Plaintiff was taking Depakote and Trazodone (for sleep) (Tr. 529). In October 7, 1999 Plaintiff appeared depressed but was "vague about symptoms" and not taking her medication (she had no money) (Tr. 528). The doctor gave her Prozac and noted in an addendum that she has symptoms of panic disorder with agoraphobia (Tr. 528). A month later the Prozac was discontinued and Imipramine was prescribed instead (Tr. 527). On March 13, 2000, Dr. Domingo indicated that his diagnosis was panic disorder with agoraphobia, that Plaintiff avoids crowded places but also gets panicky when left alone, that she was not sleeping well and was having nightmares (Tr. 526). He continued the Imipramine and Plaintiff also is reported as taking Trazadone again (Tr. 526). Her condition continues in April and May; however, in June, Dr. Domingo notes that while she still is agoraphobic, she is doing "fairly well" (Tr. 523). By this time, Plaintiff was receiving benefits on her second application.

Contrary to Plaintiffs' assertion, the ALJ did not ignore these lines of evidence. Rather, the ALJ noted the diagnoses made in these records and found them to constitute severe medically determinable mental impairments (Tr. 241, 243). The ALJ also recounted the records from the Riverside Treatment Center noting that Plaintiff was discharged for lack of attendance in group sessions (Tr.

8

242).  And, the ALJ indicated that Dr. Domingo's conclusion that Plaintiff could not work in a treatment note dated May, 2000 was unsupported by any clinical findings (Tr. 243).  As such, the ALJ did not ignore these lines of evidence – she merely found that they did not mean that Plaintiff was entitled to benefits prior to May, 2000.

Plaintiff nonetheless argues that the evidence would fit the requirements of an anxiety related disorder.  The ALJ stated that Plaintiff's second application was approved based on a finding that Plaintiff met section 12.06 of the Listings of Impairments.  20 C.F.R. 404, Subpt. P, App. 1.  This section is entitled "Anxiety Related Disorders" and states that "in these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms . . . ."  *Id.*  To meet the requirements of the Listing, Plaintiff must either meet subsections A and B or subsections A and C:

> A. Medically documented findings of at least one of the following:
>
>> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>>
>>> a. Motor tension; or
>>> b. Autonomic hyperactivity; or
>>> c. Apprehensive expectation; or
>>> d. Vigilance and scanning;
>>
>> Or
>>
>> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
>>
>> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

9

      4. Recurrent obsessions or compulsions which are a source of marked distress; or

      5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

      1. Marked restriction of activities of daily living; or

      2. Marked difficulties in maintaining social functioning; or

      3. Marked difficulties in maintaining concentration, persistence, or pace; or

      4. Repeated episodes of decompensation, each of extended duration.

Or

C. Resulting in complete inability to function independently outside the area of one's home. *Id.*

The ALJ specifically indicated that Plaintiff met section 12.06(C) in light of Dr. Domingo's May, 2005 opinion. Presumably, then, Plaintiff also met some portion of 12.06(A).

      The first mention of a condition that could fit section 12.06(C) is the March 13, 2000 note in which Dr. Domingo stated that his diagnosis is panic disorder with agoraphobia. The doctor stated that Plaintiff is practically housebound, that she is sometimes panicky, that she avoids crowded places, that she is not sleeping well and is having nightmares. Plaintiff does not elaborate how this scant note provides adequate evidence to support a finding that Plaintiff's condition fits the entirety of section 12.06. The ALJ noted other evidence that would take Plaintiff out of this Listing. For example, October, 1998 and January, 1999 consultative reports

indicated only mild or moderate restrictions of daily living and the ability to perform simple, unskilled job (Tr. 244). This would be inconsistent with Dr. Domingo's assessment and the ALJ may correctly decide not to give it controlling weight. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). The ALJ also relied on a medical expert, Dr. Sanford Pomerantz, who, after having reviewed Plaintiff's medical records, testified at the 2005 hearing that "mental status examinations do not indicate significant cognitive problems or mental confusion," that "the Illinois Department of Corrections medical reports provided no reference to limitations in the claimant's functioning," and that Plaintiff would still be able to do simple work tasks (Tr. 244-245). An ALJ is entitled to rely on the conclusions of a qualified medical expert. *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). Thus, the ALJ reasonable concluded that Plaintiff was able to function independently outside of her home prior to May, 2000, a conclusion that would render 12.06 inapplicable.

Plaintiff next argues that the ALJ should have ordered IQ testing and that this matter should be remanded in order for the Commissioner to consider a new IQ test that was performed by Dr. Jo Ann C. Milani on January 31, 2006. The results of the IQ test were a full scale score of 75 that is "considered an accurate measure of her present intellectual functioning." The ALJ declined to do an IQ test because there was no evidence of mental retardation in the record, because Dr. Pomerantz indicated that testing would not be appropriate because it relied on honest answers and Plaintiff had questionable credibility, and because the test itself would not show disability without accompanying functional limitations (Tr. 247). Again, the

ALJ is entitled to rely on the medical expert as to what tests should be performed. While Plaintiff objects, at this stage, that Dr. Pomerantz is unqualified, Plaintiff has not pointed to any portion in the record where she made such a timely objection and may have waived such objections. *See Mills v.* Apfel, 244 F.3d 1, 8 (1st Cir. 2001). Plaintiff also does not point to any portion of the record for the proposition that Dr. Pomerantz has never administered an IQ test or that he is unfamiliar with the test. Nor has Plaintiff cited to any case authority upon which to disqualify Dr. Pomerantz as an expert. Plaintiff also does not specifically object to the ALJ's credibility determination that Plaintiff will say what is necessary to acquire benefits. In any event, substantial evidence supports the ALJ's finding that mental retardation was not a factor in this case that would have justified additional testing.

Plaintiff also does not elaborate on how IQ test results would further her cause by placing her impairments within one of the Listings of Impairments (that is, Plaintiff doesn't mention or argue that her IQ results would place her within a particular Listing) or its equivalent. Nor does Plaintiff explain how the IQ test, which tested Plaintiff's intellectual functioning as of 2006, would have any bearing on whether she was entitled to benefits prior to May, 2000. As such, the Court does not find the test either relevant or material such that a sentence six remand would be necessary. *See Johnson v. Apfel*, 191 F.3d 770, 771 (7th Cir. 1999) ("To be material, the evidence must relate to the claimant's condition *during the relevant time period* encompassed by the disability application under review." (emphasis added, quotation marks and citation omitted)).

## CONCLUSION

For the foregoing reasons, the court finds that substantial evidence supported the ALJ's determination that Plaintiff was not entitled to SSI benefits from August, 1998 to April, 2000. Therefore, Plaintiff's Motion for Summary Judgment (Doc. 21) is DENIED and Defendant's Motion for Summary Affirmance (Doc. 19) is GRANTED.

CASE TERMINATED


Entered this <u>8th</u> day of April, 2010

                                            s/ Joe B. McDade
                                            JOE BILLY MCDADE
                                Senior United States District Judge